1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GEORGE I. JOHNSON,                   No. CIV S-06-1745-MCE-CMK-P

12              Plaintiff,

13      vs.                               FINDINGS AND RECOMMENDATIONS

14   SCOT KERNAN, et al.,

15              Defendants.

16   _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment

19   (Doc. 33).

20

21                        I.  BACKGROUND

22      A.      Plaintiff's Allegations

23              This action proceeds on the first amended complaint (Doc. 8), filed on October 2,

24   2006.  Plaintiff alleges that, due to overcrowded prison conditions, it is prison policy to place

25   "mentally disturbed and dangerous" inmates in cells with other inmates.  He contends that this

26   "practice" has resulted in numerous serious injuries and even death to inmates.  Specifically,

                                             1

plaintiff claims that, on November 25, 2004, inmate Tracy Stewart, who had mental and emotional disorders, was placed in plaintiff's cell.  He claims that inmate Stewart had a history of "past incidents of assaults and threats of assaults on other cellmates."  He states that, between December 2004 and January 2005, he approached defendants Swope, Mason, Lynch, Jeffries, and Martinez – all of who were prison guards on plaintiff's cell  block – to let them know of his safety concerns regarding inmate Stewart and to request a cell move.  Plaintiff also states that he wrote to defendant Kernan – the prison warden – about his concerns.  According to plaintiff, he contacted defendants Roth, Glantz, Kennedy, Flint, and Lea about his concerns.

Plaintiff alleges that the "deliberate placing of inmate Stewart in the cell with plaintiff was designed to cause plaintiff . . .  injury due to plaintiff's prior complaints and litigation. . . ."  He claims that, on January 16, 2005, inmate Stewart had a "mental collapse" and that Stewart threw boiling water on plaintiff's face, head, neck, and shoulders.  Plaintiff states that he suffered a fracture to the bone around his right eye as a result of the assault by Stewart. Plaintiff also alleges that he did not receive adequate medical treatment following the assault.

**B.**     **Undisputed Facts**

With their motion for summary judgment, defendants have submitted a statement of undisputed facts, supported by various exhibits.  These facts are as follows:

1.     Plaintiff and inmate Stewart were assigned to the same cell on November 24, 2004;

2.     At a November 24, 2004, meeting of the Institutional Classification Committee ("ICC") – members of which included defendants Kernan and Lea – it was determined that inmate Stewart was appropriate for general population placement in a double cell because:  (a) he had not been involved in any inmate altercations in over seven years; (b) there was no evidence that Stewart was mentally ill (see declaration of S. Kernan, Exhibit A to defendants' motion for summary judgment, and declaration of M. Lea, Exhibit B to defendants' motion);

3.     Plaintiff had no enemies known to defendants or otherwise documented in his prison file prior to the January 16, 2005, incident (see declarations of defendants S. Kernan, J. Flint, D. Roth, J. Jeffries, D. Kennedy, J. Mason, and S. Swope, Exhibits B, C, D, E, F, G, H, and I to defendants' motion);

4.      Plaintiff and inmate Stewart agreed to cell together (see declaration of Mason, Exhibit H to defendants' motion);

5.      Plaintiff and inmate Stewart both indicated to defendant Mason that they were willing to be housed together until alternate arrangements could be made (see id.);

6.      Neither plaintiff nor inmate Stewart had warned any defendant prior to the incident that either was in danger from the other (see Exhibits B, C, D, E, F, G, H, and I); and

7.      None of the defendants had reason to suspect that plaintiff was in danger from inmate Stewart (see id.);

In his opposition, plaintiff states that all defendants were aware of his requests for a cell move and that the requests themselves were indicative of a problem.  He also states that inmate Stewart had been on single-cell status for over ten years prior to being housed with plaintiff.  According to plaintiff, a rules violation report issued to Stewart following the assault indicates that Stewart had told prison officials that  he "felt his life was in danger in that cell." Plaintiff concludes that defendants should have known that Stewart posed a risk given that he had been single-cell housed for so long prior to being housed with plaintiff.


## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

1  depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment

2  should be entered, after adequate time for discovery and upon motion, against a party who fails to

3  make a showing sufficient to establish the existence of an element essential to that party's case,

4  and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of

5  proof concerning an essential element of the nonmoving party's case necessarily renders all other

6  facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

7  whatever is before the district court demonstrates that the standard for entry of summary

8  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

9        If the moving party meets its initial responsibility, the burden then shifts to the

10  opposing party to establish that a genuine issue as to any material fact actually does exist. See

11  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

12  establish the existence of this factual dispute, the opposing party may not rely upon the

13  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

14  form of affidavits, and/or admissible discovery material, in support of its contention that the

15  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

16  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

18  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

19  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

20  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

21        In the endeavor to establish the existence of a factual dispute, the opposing party

22  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

23  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

1   committee's note on 1963 amendments).

2          In resolving the summary judgment motion, the court examines the pleadings,

3   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4   any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

5   Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

6   before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

7   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

8   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

9   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

10  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

11  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

12  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

13  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

14

15                              **III.  DISCUSSION**

16          Plaintiff's primary claim is that defendants violated the Eighth Amendment by

17  ignoring a safety risk posed by being housed with inmate Stewart.  Plaintiff also contends that

18  defendants placed him in the same cell with inmate Stewart, knowing that violence would ensue,

19  in retaliation for plaintiff's "prior complaints and litigation."  Finally, plaintiff appears to assert

20  an Eighth Amendment claim based on the medical care he received following the assault by

21  Stewart.  Defendants' motion focuses entirely on plaintiff's Eighth Amendment safety claim.

22  Defendants assert that there is no evidence that any of them had knowledge that Stewart posed a

23  risk to plaintiff's safety.

24  / / /

25  / / /

26  / / /

                                          5

A.      **Safety Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  To demonstrate that a prison official was deliberately indifferent to a safety risk, the prisoner must establish that the official knew of the risk but disregarded it.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.

/ / /

/ / /

/ / /

1    The court agrees with defendants that there is no evidence any defendant was
2 aware prior to the January 2005 incident that inmate Stewart posed any safety risk to plaintiff.  In
3 particular, defendants have submitted their declarations indicating that they had no such
4 knowledge.  In opposition, plaintiff appears to conclude that the risk was obvious because:  (1)
5 Stewart had been single-celled for ten years before being housed with plaintiff; and (2) Stewart
6 had  requested on numerous occasions to be re-housed in a single cell.  The court disagrees that
7 either fact indicates an obvious risk.  Accepting as true that Stewart had been single-celled for ten
8 years before being housed with plaintiff, the evidence submitted by defendants indicates that,
9 prior to being housed with plaintiff, the ICC conducted a review of Stewart's prison record.  This
10 review showed that Stewart would not reasonably pose any danger to a cellmate.  Therefore,
11 there was no way that defendants could have foreseen the assault on plaintiff.

12    As to plaintiff's argument that Stewart stated in the context of the rules violation
13 report that Stewart felt his life was in danger, at best shows that <u>Stewart</u>, not plaintiff, was at risk.
14 There is no evidence that plaintiff ever informed any defendant that he believed Stewart posed a
15 risk to his safety.  Because this essential element of plaintiff's claims cannot be established,
16 defendants are entitled to summary judgment on plaintiff's safety claim.

17    **B.    Medical Care and Retaliation Claims**

18    While defendants do not address plaintiff's medical care and retaliation claims,
19 this court may do so under its screening authority.  The court must dismiss a complaint or portion
20 thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be
21 granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  <u>See</u> 28
22 U.S.C. § 1915A(b)(1), (2).  As to plaintiff's medical care claim, the court finds that he has failed
23 to state a claim because he has not alleged that any named defendant was personally involved in
24 the alleged denial or delay in medical treatment.  Similarly, as to his retaliation claim, plaintiff
25 has not alleged any personal involvement on the part of any named defendant.  Nor has plaintiff
26 alleged that any defendant knew of his "prior complaints and litigation."   Therefore, these claims

1   should be dismissed.

2          The only question is whether plaintiff is entitled leave to file a second amended

3   complaint as to these claims.  The court observes that plaintiff was advised of the requirement of

4   alleging a causal link between alleged violations and each named defendant in the September 7,

5   2006, order dismissing plaintiff's original complaint with leave to amend.  Specifically, the court

6   stated:

7               If plaintiff chooses to amend the complaint, plaintiff must
                demonstrate how the conditions complained of have resulted in a
8               deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625
                F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
9               each named defendant is involved, and must set forth some affirmative
                link or connection between each defendant's actions and the claimed
10              deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980);
                Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

11

12  Having previously been advised of this requirement, it appears that plaintiff is either unwilling or

13  unable to comply by linking the named defendant to either a medical care or retaliation claim.

14  The court, therefore, finds that providing plaintiff further opportunity to amend would not serve

15  any purpose

16

17                              **IV.  CONCLUSION**

18          Based on the foregoing, the undersigned recommends that:

19          1.      Defendant's motion for summary judgment (Doc. 33) be granted;.

20          2.      Plaintiff's medical care and retaliation claims be dismissed; and

21          3.      The Clerk of the Court be directed to enter judgment and close this file.

22          These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

24  after being served with these findings and recommendations, any party may file written

25  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

26  Findings and Recommendations."  Failure to file objections within the specified time may waive

1    the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

2

3       DATED:  April 21, 2008

4
                                          _____
5                                         CRAIG M. KELLISON
                                          UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26